## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **CHARISMA HANNIBAL** | § | |
| **Plaintiff** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 4:22-CV-01330** |
| | § | |
| | § | **(JURY REQUESTED)** |
| **SHARMAYNE IVORY** | § | |
| **Defendant** | § | |

### PLAINTIFF'S PROPOSED PRETRIAL ORDER

### 1. Appearance of counsel

**For Plaintiff:**

Craig A. Washington Lead Attorney
P.O. Box 306
Bastrop, Texas 78602-0306
713.385.9060
washlawfirm@aol.com.

Oliver W. Sprott- Co-Counsel
3801 Kirby Drive, Suite 411
Houston, TX  77098
713.269.3620
sprottlaw@yahoo.com

Harold V. Dutton, Jr.- Co-Counsel
3801 Kirby Drive, Suite 411
Houston, Texas 77098
713.659.5998
theduttonlawfirm@yahoo.com

**For Defendant:**

David A. Nachtigall, Lead Attorney
1545 Heights, Ste. 100
Houston, Texas 77008
713.221.1008
david@dntriallaw.com

George A. Nachtigall, Co-Counsel
1545 Heights, Ste. 100

United States Courts
Southern District of Texas
F I L E D

DEC 0 2 2024

Nathan Ochsner, Clerk of Court

Houston, Texas 77008
george@dntriallaw.com

## 2. Statement of the case

At approximately 1:15 a.m., on December 26, 2021, Deputy Ivory, while working her regular duties as Deputy Constable for Harris County Constable Precinct 1 which included patrolling NRG Stadium in Houston, Texas, Deputy Ivory observed an Infinity SUV driving in the NRG Red Lot. Since there was no reason for any vehicle to be traveling on the lot and Deputy Ivory claims the vehicle was being driven in an unsafe manner, Deputy Ivory, while driving her marked patrol vehicle, attempted to conduct a traffic stop.

The driver of the Infinity SUV was Charisma Hannibal, who was seventeen years of age at the time, failed to stop even though Deputy Ivory' vehicle had its overhead flashing red and blue lights on but no siren was activated. After almost five minutes of traveling, the Infinity SUV came to a stop in the NRG Tan parking lot and Plaintiff Hannibal exited her vehicle and began walking toward Defendant Ivory. Deputy Ivory exited her patrol vehicle and stood outside of the driver's side door with her firearm drawn because Deputy Ivory believed Charisma Hannibal had already committed the felony of evading in a motor vehicle, and Deputy Ivory feared that Plaintiff Hannibal could have had a weapon in her vehicle. Defendant Ivory instructed Plaintiff Hannibal to stop walking towards Defendant Ivory but continued pointing her duty weapon at Plaintiff Hannibal.

Defendant Ivory had a verbal exchange with Plaintiff Hannibal including asking Plaintiff Hannibal why she failed to previously stop. Without explanation, Plaintiff Hannibal began walking back to the Infinity SUV she had been driving and

Defendant Ivory instructed Plaintiff Hannibal not to get into the Infinity SUV. Plaintiff Hannibal ignored the warnings of Defendant Ivory and got back inside the Infinity SUV. Plaintiff Hannibal turned on the ignition of the Infinity SUV and put the vehicle in reverse which was in the opposite direction of where Defendant Ivory was positioned while also turning the vehicle such that it now faced towards Deputy Ivory.

While the Infinity SUV was moving in reverse, Defendant Ivory fired one shot at the Infinity SUV and after the shot, the Infinity SUV began moving forward in the direction of Defendant Ivory. The next eight shots fired by Defendant Ivory was to the passenger side of the Infinity SUV which by this time was passing in front of Defendant Ivory. Deputy Ivory continued to discharge her firearm eight more times as Hannibal drove forward and then turned left moving away from Deputy Ivory. The first nine rounds did not stop Hannibal. Hannibal initially struck a curb and stopped momentarily, then drove over the curb and headed in the general direction of an NRG security person, Gregory Schmid, and Deputy Ivory's patrol car. Deputy Ivory fired six more rounds.  In total, Defendant Ivory fired all 15 bullets in her weapon's ammunition clip at Plaintiff Hannibal, striking Plaintiff Hannibal a total of five times.

After being shot five times, Plaintiff Hannibal drove the Infinity SUV to another closed entrance/exit NRG gate where the Infinity SUV came to a stop. Then Houston Police Department officers arrived and ordered Plaintiff Hannibal to exit the Infinity SUV and Plaintiff Hannibal was arrested Plaintiff was transported

to Ben Taub Hospital and all of the charges for which Plaintiff Hannibal was arrested were dismissed by the Harris County District Attorney.

## 3. Jurisdiction

This Court has jurisdiction under 28 U.S.C.A § 1331. (1948).

## 4. Motions

The following motions are pending before the Court:

- Defendant Sharmayne Ivory's Motion for Summary Judgment and Plaintiff Charisma Hannibal's Response

- Defendant's Objections to Plaintiff's Witness List and Plaintiff's Response

- Defendant's Objections to Plaintiff's Exhibit List and Plaintiff's Response.

## 5. Contentions of the Parties

Plaintiff

- Plaintiff Hannibal asserts that Defendant Ivory violated Plaintiff Hannibal's rights pursuant to the Fourth Amendment to the U.S. Constitution by shooting Plaintiff Hannibal.

Defendant

- Defendant Ivory contends that the defense of qualified immunity is applicable to this matter and this case should be dismissed for that reason.

## 6. Admissions of fact

Plaintiff

a. Was, at all times herein, aware that Defendant Ivory was a law enforcement officer;

b. Disregarded those Defendant Ivory' commands which Plaintiff Hannibal could not actually hear.

c. Attempted to drive away from Defendant Ivory while Defendant Ivory was outside of her vehicle.

d. Plaintiff Hannibal has made the following admissions under Fed. R. Civ. P. 36:

Plaintiff Hannibal was aware that the Patrol Car driven by Defendant Ivory was a police vehicle.

During the incident, Plaintiff Hannibal repeatedly disregarded parts of Defendant Ivory's commands.

When Plaintiff Hannibal exited her vehicle she was aware that Defendant Ivory was a law enforcement officer.

During the incident, after she exited her vehicle, Plaintiff Hannibal did not follow Defendant Ivory's command to stop walking in her direction.

During the Incident, after she exited her vehicle, Plaintiff Hannibal did not follow Defendant Ivory's command to stop walking back to Plaintiff Hannibal's vehicle.

During the incident, after Plaintiff Hannibal exited her vehicle, Plaintiff Hannibal did not follow Defendant Ivory's command to stay outside of her vehicle.

During the Incident Plaintiff Hannibal attempted to drive away from Defendant Ivory when Defendant Ivory was outside of her vehicle.

Defendant

a. Was acting under the color of law at all times during the incident involving this lawsuit.

b. Never said to Plaintiff Hannibal she was under arrest.

c. Fired 15 shots at Plaintiff Hannibal striking Plaintiff Hannibal 5 times.

**7. Agreed propositions of law**

a. All claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness', rather than under a substantive due process approach.
*Graham v. Connor,* 490 U.S. 386, 395 (1989)

b.  A court may request specific findings from the jury such that the court can determine whether qualified immunity should apply.
    *Tatro v. Kervin,* 41 F.3d 9, 15 (1st Cir. 1994)

c.  After trial, if defendants continue to urge qualified immunity, the decisive question, ordinarily, is whether the evidence favoring the party seeking relief is legally sufficient to overcome the defense.
    *Ortiz v. Jordan,* 562 U. 180 (2011)

d.  Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.
    *Graham v. Connor,* 490 U.S. 386, 396 (1989)

e.  The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene. What the specific officer believed is irrelevant unless the reasonable officer in the same situation would have reacted in the same manner.
    *Graham v. Connor,* 490 U.S. 386, 396-397 (1989)

f.  The Fourth Amendment guarantees the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures and shall not be violated.
    *United States v. Mendenhall,* 446 U.S. 544, 546 (1980)

g.  To obtain punitive damages, a plaintiff must prove by a preponderance of the evidence that the defendant either knew that her actions violated federal law or acted in reckless or callous indifference to that risk.
    *Smith v. Wade,* 461 U.S. 30, 56 (1983)

h.  Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory rights or constitutional rights of which a reasonable person would have known.
    *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)

i.  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation she confronted.
    *Saucier v. Katz,* 533 U.S. 194, 202 (2009)

k.  Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.
    *Malley v. Briggs,* 475 U.S. 335, 341 (1986)

l.  For a right to be clearly established, the contours of that right must be

sufficiently clear that a reasonable official would understand that what she is doing violates the law.
*Flores v. City of Palacios,* 381 F.3d 396, 400 (5th Cir. 2005)

m.   Clearly established means that prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.
*Anderson v. Creighton,* 483 U.S. 635, 640 (1987)

n.   The Fifth Circuit does not require a plaintiff to identify a case directly on point, but the case law must place the constitutional question beyond debate.
*Garcia v. Blevins,* 957 F.3d 596, 600 (5th Cir.2020)

o.   An exercise of excessive force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force ceased.
*Lytle v. Bexar Cnty.,* 560 F.3d 404, 413 (5th Cir. 2009)

## 8.   Exhibits

Plaintiff's Amended Exhibit List has been filed.

## 9.   Witnesses

Plaintiff's Witness

a)   **Charisma Hannibal**
**%Attorney Harold V. Dutton, Jr.**
**3801 Kirby Drive, Suite 411**
**Houston, Texas 77098**
**This is the Plaintiff who was seventeen years of age at the time of the incident with Defendant Ivory. She has now reached her majority and will testify about the events leading up to and including the shooting by Defendant Ivory. Additionally, the Plaintiff will testify about her medicals and aftercare.**

**Sharmayne Ivory**
**%David Nachtigall**
**1545 Heights Blvd., Ste. 100**
**Houston, Texas 77008**
**This the Defendant and will testify her use of excessive force toward Plaintiff Hannibal.**

**Darrin Hannibal**
**6350 Barton Hollow Lane**
**Katy, Texas 77449**

This the biological father of Plaintiff Hannibal who paid for her medical care including through his medical insurance policy.

LaSherra Tyner
6013 Queenston Blvd., Apt. 128
Houston, Texas 77084
This is Plaintiff Hannibal' biological mother who will testify how the encounter with Defendant Ivory has impacted Plaintiff Hannibal.

Sondria Clark
Houston, Police Dept.
1200 Travis, 10th Floor
Houston, Texas 77002
This is the custodian of the record for the Houston Police Department.

Harris County Constable Alan Rosen
1302 Preston, 3rd Floor
Houston, Texas 77002
This witness will testify about Defendant Ivory's employment history with the Harris County Constable's Office.

Antoinette Franklin
Harris Health System
4800 Fournace Place
Bellaire, Texas 77401
This the custodian of the record for the Harris Health System the treated Plaintiff for the injuries proximately caused by Defendant Ivory.

Chief Daniel Busken
13311 Newby Plantation Ln.
Athens, Alabama 35813
This is Plaintiff Hannibal's expert witness who will testify and offer opinions regarding Defendant Ivory' use of excessive force and whether Defendant Ivory was acting as a reasonable law enforcement officer when shooting Plaintiff Ivory.

Gregory Schmid
5523 Sanford
Houston, Texas 77093
This witness was on the scene when Defendant Ivory discharged her firearm at Plaintiff Hannibal and will testify to his account.

"If any other witnesses will be called at the trial, their names, addresses, and the subject matter of their testimony will be reported to opposing counsel as soon as they are known. This restriction, however, will not

**apply to rebuttal or impeachment witnesses, the necessity of whose testimony cannot reasonably be anticipated before trial."**

## 10. Trial

This is a jury trial and is expected to take at least three (3) days excluding jury selection.

The Plaintiff's expert witness resides in Alabama and is expected to testify in person which may result in a logistical problem.

Plaintiff's only bulky exhibit is the Houston Police Department (HPD) Offense Report. This is a complete investigation and report by HPD of the incident and offers a body cam view of the significant events of the shooting of Plaintiff by Defendant.

## 11. Additional required attachments

Motions in Limine by Plaintiff Hannibal;

Questions for examination of prospective jurors by Plaintiff Hannibal.

Plaintiff's Proposed Jury charge.


Signed on _____, 2024 at Houston, Texas



_____
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**

APPROVED:

11/28/24                          /s/ Craig A. Washington
_____          _____
Date                             Plaintiff's Counsel-CRAIG A. WASHINGTON


_____          _____
Date                             Defendant's Counsel

PLAINTIFF'S MOTION IN LIMINE

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **CHARISMA HANNIBAL**<br>**Plaintiff** | §<br>§<br>§<br>§ | |
| | § | CIVIL ACTION NO. 4:22-CV-01330<br>(Jury Requested) |
| SHARMAYNE IVORY<br>**Defendant** | § | |

## **PLAINTIFF'S MOTION IN LIMINE**

TO THE HONORABLE JUDGE OF SAID COURT:

Come now Plaintiff CHARISMA HANNIBAL, and, prior to the *voir dire* examination of the jury panel, the presentation of any evidence, or the reading of any pleadings, and respectfully moves this Honorable Court for an order instructing and directing all attorneys, and through said attorneys all parties and witnesses, not to refer, directly or indirectly, in the presence of the jury panel, or the jury finally selected to try this cause, or to make any statement, or ask any questions, injecting any of the following matters into the proceeding on this cause, or to put before the jury or jury panel, in any form or manner whatever, directly or indirectly, any of the following things or matters; or, in the alternative, to require said attorneys, parties and witnesses to first bring to the attention of the Court, out of the presence of the jury or jury panel, any such things or matters, in order that the Court may first determine the admissibility and relevance of such matters before they are injected into the case in the presence of the jury or jury panel.  Such matters are:

1.  **Hearsay.** Any hearsay comments attributed to any unidentified witness not subject to cross-examination.

2.  **Who Will Pay.** Advising the jury about who will pay the judgment or whether it is ever paid, or words to that effect.  It is reversible error to inject into the trial a party's wealth.

3.    <u>Poor Person.</u>  Any reference to the financial status of either party to this suit, and especially any reference to the Defendant (or her family) as a "poor young woman".

4.    <u>Undisclosed Witnesses.</u>  The calling of witnesses, either expert or lay witnesses, other than those previously disclosed by depositions, specific request or by way of answers to interrogatories, since the disclosure of witnesses at this time would constitute surprise and present grounds for continuance in this cause and the Defendant should not be allowed to call such witnesses without having previously disclosed same to the Plaintiff in sufficient time to secure adequate discovery regarding such witnesses.

5.    <u>Personal Attacks on Counsel.</u>  Personal attacks upon other counsel, inferences that adverse counsel is bad, has a particular reputation, or that the arguments, theories or claims of Plaintiff's counsel are the "usual" arguments, theories or claims that are typically, routinely or always used by lawyers representing Plaintiff.

6.    <u>Prior Settlement/Settlement Negotiations.</u>  Any reference to any prior settlement offers (demands) or settlement negotiations or lack of same, with any party to this lawsuit, or as to any statements which might have been made by any person in connection with such discussion or negotiations, as such would be inadmissible evidence, and if admitted, would undoubtedly necessitate the granting of a mistrial.

7.    <u>Failure to Respond to Discovery:</u> Defendant should not be allowed to call any witnesses against Plaintiff if Defendant failed to provide responses to outstanding discovery properly propounded by Plaintiff.

Each of such matters of is wholly immaterial, irrelevant and prejudicial to any matters of material fact in this cause and such matters or information or facts are not required or not necessary to the material facts to be presented to the jury or jurors in this case, and such matters would be and are prejudicial and harmful, and without probative value, and are of such character as to cause bias, prejudice, and dispose the jury against the Plaintiff, and that the mere mention thereof or the asking of questions about such matters, even if objections were timely made and sustained, would cause and create bias and prejudice the jury against the Plaintiff so that irreparable harm and damage would have already resulted to the detriment of the Plaintiff and instruction to the jury could not sufficiently dispel such prejudice from their minds.

already resulted to the detriment of the Plaintiff and instruction to the jury could not sufficiently dispel

such prejudice from their minds.

      **WHEREFORE, PREMISES CONSIDERED,** Plaintiff, CHARISMA HANNIBAL prays that

this Honorable Court grant and sustain this Motion in Limine either in whole or in part, or in separate

individual parts, and that this Court enter its order to such effect.

Respectfully submitted,


By:  /s/ *Craig A. Washington*
      Craig A. Washington
      P.O. Box 306
      Bastrop, Texas 78602
      Tel:   (713)385-9060
      Email: hotrodbentley@aol.com

      Harold V. Dutton, Jr.
      3801 Kirby Drive, Suite 411
      Houston, Texas 77098
      Tel:   (713) 659.5998
      Email the duttonlawfirm@yahoo.com

      Oliver W. Sprott
      3801 Kirby Drive, Ste. 411
      Houston, Texas 77098
      Tel:   (713) 269-3620
      Email: sprottlaw@yahoo.com

      ATTORNEYS FOR PLAINTIFF
      CHARISMA HANNIBAL


## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing has been served on all counsel of
record by electronic messenger on this 28th day of November, 2024.

      */s/ Craig A. Washington*
      Craig A. Washington

## ORDER

Plaintiff' Motion in Limine is in all things **[ ] GRANTED, [ ] DENIED,** or granted only

as to:

1.    [   ]       Hearsay;

2.    [   ]       Who Will Pay;

3.    [   ]       Poor Person;

4.    [   ]       Undisclosed Witnesses;

5.    [   ]       Personal Attacks on Counsel;

6.    [   ]       Prior Settlement/Settlement Negotiations;

7.    [   ]       Failure to Respond to Discovery;

SIGNED this _____ day of _____. 2024.

_____

JUDGE PRESIDING

**PLAINTIFF'S PROPOSED VOIR DIRE QUESTIONS**

## PLAINTIFF'S PROPOSED VOIR DIRE QUESTIONS

1. Do you own a home or rent it?

2. Have you or a close relative ever served in the military? If so, explain.

3. Your level of education/degrees, and where obtained?

4. What is your current occupation and employer, and how long have you worked there?

5. What other jobs and employers have you had during your adult life? Same for spouse?

6. What magazines do you regularly read? Newspapers?

7. What are your Hobbies?

8. What television stations do you watch more often? Radio stations listened to?

9. What social, civic, religious, professional organizations are you affiliated with? If you no longer participate, why not?

10. Are you acquainted with any of the parties, lawyers, witnesses in this lawsuit?

11. Have you or any family members or friends worked for Harris County?

12. Are any of your family members or friends lawyers?

13. Do you have any family members or friends who are police officers. Is there anything about that relationship, that would impair your ability to judge a police action in this case?

14. Have you had any personal interaction with a police officer? If so, please explain, including whether that interaction was negative, positive or neutral.

15. Have you or a family member or a close friend ever been arrested and charged with a crime? If so, please explain and include whether that would impair or otherwise affect your impartiality in this case?

16. Do you have any philosophical or religious beliefs that would prevent you from judging another person? If so, please explain.

17. Have you ever studied law or criminal justice? If so, please explain.

18. Have you or a family member been the victim of a crime?

19. Do you believe that people should have the right to sue police officers and be awarded money compensation if the evidence shows their rights have been violated?

20. Are you willing to fully compensate the Plaintiff for the damages requested if the evidence shows that the Plaintiff's rights were violated have been violated by the police?

21. Have you or anyone in your immediate family been involved in a lawsuit? If so, what was the nature of the suit and the outcome?

22. Have you ever served on a civil jury before? Criminal jury?  What was the outcome?

23. Are there any facts or circumstances you believe the court or the parties should know that might affect your ability to serve as a fair and impartial juror in this case?

## PLAINTIFF'S PROPOSED JURY QUESTIONS

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

**CHARISMA HANNIBAL**          §
      **Plaintiff**          §
                  §          CIVIL ACTION NO. 4:22-CV-01330
                  §          (Jury Requested)
**SHARMAYNE IVORY**          §
      **Defendant**          §

## PLAINTIFF, CHARISMA HANNIBAL' PROPOSED JURY INSTRUCTIONS

**MEMBERS OF THE JURY:**

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, as jurors, you are the judges of the facts. Do not consider any statement that I have made in this course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

You must answer all questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

In determining the weight to give the testimony of a witness, you should ask yourself whether there was any evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say and do something, that was different from the testimony the witness gave before you during the trial.

You should remember, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory, and that may depend upon whether it concerns an important fact or an unimportant detail.

In weighing the credibility of a witness, you may consider the fact that he has previously been convicted of a felony. Such a conviction does not necessarily destroy the witness' credibility, but is one of the circumstances you may take into account in determining the weight to give to his testimony.

You must consider only the evidence in this case. However, you may draw such

reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. You may make deductions and reach conclusions that reason and common sense lead you to make from the testimony and evidence.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence you may consider. One is direct evidence - such as testimony of an eyewitness. The other is indirect or circumstantial evidence - the proof of circumstances that tend to prove or disprove the existence or nonexistence of certain other facts. The law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

Plaintiff alleges that Sharmayne Ivory is liable to her on the basis of a violation of the U.S. Constitution which guarantees of the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. An individual is seized when by means of physical force or a show of authority her freedom of movement is restrained.

Federal law provides that Charisma Hannibal may recover damages if Sharmayne Ivory, acting under color of law, deprived Charisma Hannibal of a right guaranteed by the 4th Amendment to the U. S. Constitution. The right at stake here is the right to be free from excessive force. The parties have agreed that Sharmayne acted under color of law. The only issue for you, therefore is the issue of excessive force. You are not to determine the legality of the attempt to arrest Charisma Hannibal.

### EXCESSIVE FORCE DEFINED

Every person has the constitutional right not to be subjected to unreasonable or excessive force by a law enforcement officer. On the other hand, an officer, in making an arrest, has the right to use such force as a reasonable officer would believe is necessary under the circumstances to complete that investigatory stop or to effectuate what a reasonable officer would believe to be a lawful arrest. Whether or not the force was unnecessary, unreasonable or excessively violent is an issue for you to decide on the basis of that degree of force that a reasonable and prudent law enforcement officer would have applied under the same circumstances disclosed in this case. The test of reasonableness requires careful attention to the facts and circumstances including, but not limited to, the severity of the crime the officer was investigating, crime for which an arrest was attempted; whether Charisma Hannibal posed an immediate threat to the safety of the officer or others; whether Charisma Hannibal was actively resisting the investigatory stop or arrest; and the severity of any injury to Charisma Hannibal.

The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. With respect to a claim of excessive force, the standard of reasonableness at that moment applies. Not every push or shove, even if it may later seem unnecessary, violates the constitution. The determination of reasonableness must allow for the fact that police officers are often forced to make split-second judgments- in circumstances that are tense, uncertain and rapidly evolving- about the amount of force that is necessary in a particular situation.

The reasonableness inquiry is an objective one. The question is whether an officer's actions are objectively reasonable in light of all facts and circumstances confronting

Sharmayne Ivory, without regard to Sharmayne Ivory's underlying intent or motivation. Evil intentions will not make a constitutional violation out of an objectively reasonable use of force; and good intentions will not make an unreasonable use of force proper.

Uder the 4th Amendment of the U.S. Constitution, a police officer may only use such force as is objectively reasonable under all circumstances. You must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene. Although the facts known to the officer are relevant to your inquiry, an officer's subjective intent or motive is not relevant to your inquiry.

To prove her claim of unconstitutionally excessive force, Charisma Hannibal must prove by a preponderance of the evidence the following:

> That Sharmayne Ivory intentionally, rather than negligently, used unconstitutionally excessive as defined herein. However, it is not necessary to find that Sharmayne Ivory had any specific purpose or desire to deprive Charisma Hannibal of her constitutional rights in order to find in favor of Charisma Hannibal. Charisma Hannibal must prove only that the action was deliberate, not that the consequence was intended. Mere negligence, however, is not sufficient. Charisma Hannibal is entitled to relief if Sharmayne Ivory intentionally acted in a manner that resulted in a violation of Charisma Hannibal's constitutional rights.

If you find that Sharmayne Ivory used excessive force against Charisma Hannibal, and thereby caused damages to Charisma Hannibal, you will then assess an amount you find to be justified by a preponderance of the evidence as full, just and reasonable compensation for all Charisma Hannibal' damages caused by that conduct. Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize Sharmayne Ivory. You may award only such damages as you find by a preponderance of the evidence were caused by unconstitutionally excessive force as defined herein. It is not necessary for Charisma Hannibal to prove the amount of her damages with certainty. On the other hand, Charisma Hannibal is not to be awarded purely speculative damages.

Charisma Hannibal has the duty to mitigate her damages- that is, to take reasonable

steps that would reduce the damages. If she fails to do so, then she is not entitled to

recover any damages that she could reasonably have avoided incurring. Sharmayne Ivory

·has the burden of proving by a preponderance of the evidence that Charisma Hannibal

failed to take such reasonable steps.

If you find that Charisma Hannibal is entitled to damages for losses that will occur in

the future, you will have to reduce this amount, whatever it may be, to its present worth.

The reason for this is that a sum of money that is received today is worth more than the

same money paid out in installments over a period of time since a lump sum today, such as

any amount you might award in your verdict, can be invested and earn interest in the years

ahead.

You may have heard testimony concerning the likelihood of future inflation and what

.rate of interest any lump sum could return. In determining the present lump sum value of

any future earning you conclude Charisma Hannibal has lost or future damages Charisma

Hannibal will suffer, you should consider only a rate of interest based on the best and

safest investments, not the general stock market and you may set off against it a

reasonable rate of inflation.

The elements of damages that you may consider are as follows:

1.    Reasonable past and future medical expenses incurred by Charisma
      Hannibal in securing treatment for injuries caused by Sharmayne
      Ivory's conduct.

2     A sum to compensate Charisma Hannibal for income the she lost, plus
      a sum to compensate her for any loss of earning power that you find
      from the evidence she will probably suffer in the future, if you find by a
      preponderance of the evidence that Sharmayne Ivory caused these
      losses.

In determining the amount of future loss, you should compare what Charisma Hannibal' health, physical ability and earning power were before the incident with what they are now; the nature and severity of her condition; the expected duration of her condition; and the extent to which her condition may improve or deteriorate in the future. The objective is to determine the effect, if any, on future earning power that you find Charisma Hannibal will probably suffer in the future. In that connection, you should consider Charisma Hannibal' work life expectancy, taking into account her occupation, her habits, her past health record, her state of health at the time of the incident and her employment history. .Work life expectancy is that period of time that you expect Charisma Hannibal would have continued to work, given her age, health, occupation, and education.

An amount for any pain and suffering, emotional distress and humiliation that you find from the evidence Charisma Hannibal endured or will endure as a result of the excessive force. Even though it is obviously difficult to establish a standard of measurement for this element, that difficulty is not grounds for denying recovery. You must, therefore, make the best and most reasonable estimate you can, not from a personal point of view but from a fair and impartial point of view of the amount of pain and suffering, emotional distress and humiliation that Charisma Hannibal incurred or will incur as a result of the excessive force and you must place a money value on this, attempting to come to a conclusion that will be fair and just to the parties. This will be difficult for you to measure in terms of dollars and cents, but there is no other rule for assessing this element of damages.

If you have awarded compensatory damages, you may, but are not required to, award punitive damages to Charisma Hannibal under some circumstances. To obtain punitive damages, Charisma Hannibal must prove by a preponderance of the evidence that

Sharmayne Ivory either knew that her actions violated federal law or acted in reckless or callous indifference to that risk. If Charisma Hannibal satisfies this requirement, it is entirely up to you whether or not to award punitive damages. But it should be presumed that Charisma Hannibal has been made whole by compensatory damages, so you should award punitive damages only if Sharmayne Ivory' culpability is so reprehensible as to warrant further sanctions to achieve punishment or deterrence.

If you decide to award punitive damages, the amount to be awarded is also within your sound discretion. The purpose of a punitive damage award is to punish a defendant or deter a defendant and others from similar conduct in the future. Factors you may consider include, but are not limited to the nature of Sharmayne Ivory's conduct (how reprehensible or blameworthy was it), the impact of that conduct on Charisma Hannibal, the ratio between the actual compensatory damages and the punitive damages, the relationship between Charisma Hannibal and Sharmayne Ivory, the likelihood that Sharmayne Ivory or others would repeat the conduct if the punitive award is not made, and any other circumstances shown by the evidence, including any mitigating or extenuating circumstances that bear on the question of the size of such an award. You may determine reprehensibility by considering the nature and extent of the harm, whether the conduct showed indifference to or disregard for the health or safety of others; whether the conduct involved repeated actions or was an isolated instance; and whether the harm was the result of intentional malice.

The fact that I have given you this charge instructions about a particular claim or defense, or that I have not so instructed you, should not be interpreted in any way as an indication that I have a belief as to which party should win this case, Similarly, the fact that I

have given you instructions concerning the issue of Plaintiff' alleged damages should not be interpreted in any way as an indication that I believe that Plaintiff should or should not prevail.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that I have given you about your conduct during the trial. After you have reached your unanimous verdict as to each special interrogatory, your foreperson is to fill in on the form your answer to that interrogatory, if an answer is called for. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Courtroom Deputy, signed by your foreperson. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone- including me- how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

A verdict form has been prepared for you. After you have reached a unanimous agreement on a verdict, your foreperson should complete the verdict form according to your

deliberations, sign and date it, and advise the Courtroom Deputy that you are ready to return to the courtroom. You are not required to talk with anyone about the case unless I order otherwise.  You may now retire to the jury room to conduct your deliberations.

SIGNED at Houston, Texas, this ___ day of _____, 2024.


_____
Presiding United States District Judge

## Question Number 1

Do you find, from a preponderance of the evidence, that Sharmayne Ivory seized Charisma Hannibal by firing Sharmayne Ivory's weapon at Charisma Hannibal?

Answer "We do" or "We do Not".

We do _____          We do Not _____

If, in answer to Question Number 1, you answered "We do" then proceed to Question No. 2. If, in answer to Question Number 1, you answered "We do Not, then do not proceed. And do not go any further.

## Question Number 2

Do you find, from a preponderance of the evidence, that the seizure of Charisma Hannibal by Sharmayne Ivory was in violation of the 4th Amendment to the U.S. Constitution?

Answer "We do" or "We do Not".

We do _____          We do Not _____

If, in answer to Question Number 2, you answered "We do" then proceed to Question No. 3. If, in answer to Question Number 2, you answered "We do Not", then Stop; do not go any further.

## Question Number 3

Do you find, from a preponderance of the evidence, that Sharmayne Ivory' conduct toward Charisma Hannibal was objectively unreasonable?

Answer: "We do" or "We do Not"

____ We Do                              _____We do Not

If you answered We Do, then proceed to Answer Question Number 4.
If you answered We Do Not, then Stop and Do no go any further.

## Question Number 4

What sum of money, if now paid in cash, would fairly and reasonably compensate Charisma Hannibal for injuries and damages proximately caused by Sharmayne Ivory:

a.    Compensatory damages:

"Compensatory damages include actual damages like medical expenses, past and future; loss of earning capacity

Answer in dollars and cents for damages, if any.

Answer: _____

b.    Mental anguish

"Mental anguish" means the emotional pain, torment and suffering experienced by Charisma Hannibal because of Sharmayne Ivory' violation of Charisma Hannibal 4th Amendment to the U.S. Constitution.

Answer in dollars and cents for damages, if any.

Answer: _____

c.    Physical Pain and Suffering

"Physical pain and suffering" is the pain of Charisma Hannibal' actual physical injuries. It includes not just the suffering Charisma Hannibal has endured to date but also the detrimental effects that Charisma Hannibal is likely to suffer in the future as a result of the conduct of Sharmayne Ivory.

Answer in dollars and cents for damages, if any:

Answer : _____

If, and only if, you have included an amount in any of the above, go to the next page.

d.    Punitive Damages

If you have awarded compensatory nominal damages, you may also award punitive damages to Charisma Hannibal under some circumstances. To obtain punitive damages, Charisma Hannibal must prove by a preponderance of the evidence that Sharmayne Ivory either knew that her actions violated federal law or acted in reckless or callous indifference to that risk. If Charisma Hannibal satisfies this requirement, it is entirely up to you whether or not to award punitive damages. But it should be presumed that Charisma Hannibal has been made whole by compensatory damages, so you should award punitive damages only if Sharmayne Ivory' culpability is so reprehensible as to warrant further sanctions to achieve punishment or deterrence.

If you decide to award punitive damages, the amount to be awarded is also within your discretion. The purpose of a punitive damage award is to punish a defendant or deter a defendant and others from similar conduct in the future. Factors you may consider include but are not limited to, the nature of Sharmayne Ivory's conduct (how reprehensible or blameworthy was it), the impact of that conduct on Charisma Hannibal, the ratio between the actual compensatory damages, the relationship between Charisma Hannibal and Sharmayne Ivory, the likelihood that Sharmayne Ivory or others would repeat the conduct if the punitive award is not made, and any other circumstances shown by the evidence, including any mitigating or extenuating circumstances that bear on the question of the size of such an award, You may determine reprehensibility by considering the nature and extent of the harm, whether the conduct showed indifference to or disregard for the health or safety of others, whether the conduct involved repeated actions or was an isolated instance and whether the harm was the result of intentional malice.

Answer in dollars and cents:

ANSWER: $_____

## PLAINTIFF'S AMENDED WITNESS LIST

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **CHARISMA HANNIBAL** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:22-CV-01330** |
| | § | |
| **SHARMAYNE IVORY** | § | |
| | § | |
| **Defendant.** | § | |

## TRIAL WITNESS LIST OF PLAINTIFF

| No. | Witness Name | Witness Address |
|---|---|---|
| 1. | Charisma Hannibal | %Dutton Law Firm; 3801 Kirby Drive, Ste. 411; Houston, Texas 77098 |
| | X Live     ☐ Deposition<br>X Fact     ☐ Expert     ☐Record Custodian<br>*Brief description of witness capacity and testimonial topics:*<br>This is the Plaintiff who will testify to all the facts and events of this case. | |
| 2. | Darrin Hannibal | 6350 Barton Hollow Ln,; Katy, Texas 77449 |
| | X Live     ☐ Deposition<br>X Fact     ☐ Expert     ☐Record Custodian<br>*Brief description of witness capacity and testimonial topics:*<br>This is the Plaintiff's biological father who will testify to providing the medical insurance which paid the hospital bill for Plaintiff's medical treatment | |
| 3. | LaSherra Tyner | 6013 Queenston Blvd., Apt. 128; Houston, Texas 77084 |

| | |
|---|---|
| X Live  ☐ Deposition | |
| X Fact  ☐ Expert  ☐Record Custodian | |
| *Brief description of witness capacity and testimonial topics:* | |
| This is the Plaintiff's biological mother who will testify how the shooting affected Plaintiff as a minor. | |

| 4. | Sharmayne Ivory | %David Nachtigall; 1545 Heights Blvd., Ste 100; Houston, Texas 77008 |
|---|---|---|
| | X Live  ☐ Deposition | |
| | X Fact  ☐ Expert  ☐Record Custodian | |
| | *Brief description of witness capacity and testimonial topics:* | |
| | This is the Defendant who will testify about the Defendant's use of excessive force against Plaintiff | |

| 5. | Constable Alan Rosen | 1302 Preston Street; Houston, Texas 77002 |
|---|---|---|
| | ☐ Live  ☐ Deposition | |
| | ☐ Fact  ☐ Expert  ☐Record Custodian | |
| | *Brief description of witness capacity and testimonial topics:* | |
| | This witness will testify about the law enforcement training of Defendant and Defendant's employment with Harris County Constable-Precinct One. | |

| 6. | Sondra Clark | Houston Police Department; 1200 Travis, 10th Floor; Houston, Texas 77002 |
|---|---|---|
| | X Live  ☐ Deposition | |
| | ☐ Fact  ☐ Expert  X Record Custodian | |
| | *Brief description of witness capacity and testimonial topics:* | |
| | This is the custodian of the records for the Houston Police Department and the Offense Report #1723656-21 | |

| 7. | Chief Daniel Busken | 13311 Newby Plantation Ln.; Athens, Alabama 35813 |
|---|---|---|
| | X Live          ☐ Deposition<br><br>☐ Fact          X Expert          ☐ Record Custodian<br><br>*Brief description of witness capacity and testimonial topics:*<br><br>This is the Plaintiff's expert witness who will testify and offer opinions related to Defendant's use of excessive force as a reasonable law enforcement officer. | |

| 8. | Antoinette Franklin | Harris Health System; 4800 Fournace Place Bellaire, Texas 77401 |
|---|---|---|
| | X Live          ☐ Deposition<br><br>☐ Fact          ☐ Expert          X Record Custodian<br><br>*Brief description of witness capacity and testimonial topics:*<br><br>This is the records custodian pf the Ben Taub Hospital where Plaintiff Hannibal received medical treatment for the injuries proximately caused by Defendant Ivory. | |

**Plaintiff's Additional Witness Statement**

"If any other witnesses will be called at the trial, their names, addresses, and the subject matter of their testimony will be reported to opposing counsel as soon as they are known. This restriction, however, will not apply to rebuttal or impeachment witnesses, the necessity of whose testimony cannot be reasonably be anticipated before trial."

11/28/2024                                    /s/ *Craig A. Washington*
Date                                          [Signature Block]

**PLAINTIFF'S THIRD AMENDED EXHIBIT LIST**

**Appendix A**
**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **CHARISMA HANNIBAL** | § | |
| **Plaintiff** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 4:22-CV-01330** |
| | § | |
| **SHARMAYNE IVORY** | § | **(JURY REQUESTED)** |
| **Defendant** | § | |

**PLAINTIFF'S THIRD AMENDED EXHIBIT LIST**

| NO. | DESCRIPTION | OFFER | OBJ | DATE ADMIT | DATE N/ADM |
|---|---|---|---|---|---|
| 1. | HPD Interview – Gregory Schmid | | | | |
| 2. | Constable Alan Rosen' Termination Letter to Defendant Ivory | | | | |
| 3. | HPD Offense Report #1723656-21 | | | | |
| 4. | Expert Report of Dan Busken | | | | |
| 5. | Harris Hospital Medical Records of Plaintiff Hannibal | | | | |
| 6. | Defendant Ivory' Response to Plaintiff Hannibal's Request for Admissions | | | | |
| 7. | Defendant Ivory' Amended Initial Disclosures | | | | |
| 8. | Defendant Ivory' TCOLE Record | | | | |
| | | | | | |
| | | | | | |
| | | | | | |