UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHARISMA HANNIBAL | § § | Civil Action No. 4:22-cv-01330 |
| Plaintiff, | § § | (JURY REQUESTED) |
| v. | § § | |
| SHARMAYNE IVORY | § § | |
| Defendant. | § § | |

### DEFENDANT SHARMAYNE IVORY'S RESPONSE TO PLAINTIFF'S MOTION FOR NEW TRIAL

Defendant Sharmayne Ivory, pursuant to the Local Rules of the United States District Court for the Southern District of Texas and this Court's procedures, files *Defendant Sharmayne Ivory's Response to Plaintiff's Motion for New Trial* (Dkt. 80), and, in support thereof, would show as follows.

## I.
## THE RECORD SUPPORTS THE COURT'S SUMMARY JUDGMENT

1.  Plaintiff, Charisma Hannibal ("Hannibal"), argues that the summary judgment evidence does not support the Court's decision granting summary judgment in favor of defendant, Sharmayne Ivory ("Deputy Ivory") on the grounds of qualified immunity.

2.  In its *Memorandum Opinion and Order* ("Order") (Dkt. 78 at 2), this Court observed that, "[a]round 1:15 a.m., a black 2019 Infiniti SUV sped through the parking lot. (Dkt. No. 52 at 27, 30). Deputy Ivory observed that the driver was 'driving

1

erratically' and 'traveling at a high rate of speed.'"

3. In her first argument, Hannibal asserts, "[f]irst, to argue that Hannibal was driving erratically and in a dangerous manner is clearly contradicted by the video of the incident. In fact, the video confirms that the Hannibal vehicle even stopped at various stop signs while driving and being pursued by Deputy Ivory." (Dkt. 80 at 3).

4. Notwithstanding Hannibal's characterization of her driving, Deputy Ivory's dashcam video does not show Hannibal driving safely and obeying traffic signs or lane markings in the parking lot. Further, the video does not show Hannibal stopping her vehicle to comply with the red and blue flashing emergency lights of a pursuing law enforcement vehicle. Rather, the video opens with Hannibal driving at a high rate of speed into the parking lot, making a hard right turn then crossing diagonally over the marked parking lanes in front of Deputy Ivory's patrol vehicle. The video then shows Deputy Ivory activating her emergency overhead red and blue lights to initiate a traffic stop. Rather than stopping, the video shows Hannibal immediately driving away from Deputy Ivory, making a sharp right turn, then a sharp left turn, then another right turn and running through a stop sign. This all occurred within the first 85 seconds of a pursuit that continues for nearly 5 five minutes. The video then shows Hannibal taking a winding course of travel of some distance throughout the NRG parking area with Deputy Ivory in pursuit. The video further shows Hannibal making several random turns, U-turns, and accelerating in open stretches. While Hannibal, oddly enough, does appear to stop at a few stop signs,

Hannibal fails to stop at the majority of them. At one point, Hannibal comes to a brief stop and reverses her vehicle towards Deputy Ivory's vehicle. Clearly, Hannibal's driving was erratic. *See e.g.*, *Nunez-Marquez v. State*, 501 S.W.3d 226, 233-234 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd).

5. Notwithstanding Hannibal's observance of a few stop signs, Hannibal drove erratically and unsafely, failed to comply with Texas law, and evaded arrest. The video does not "blatantly contradict" Deputy Ivory's account or this Court's observation that Hannibal was driving erratically and traveling at a high rate of speed. *See Macias v. Watkins*, No. 23-40580, 2024 WL 3427047, at *2 (5th Cir. July 16, 2024).

6. In her second argument, Hannibal argues that the video does not support this Court's determination that,

> "The bullets did not stop Hannibal. (Dkt. No. 50-1 at 5); (Dkt. No. 52-1 at 01:50–01:54). After Deputy Ivory's shots, Hannibal turned left, drove over a curb, and moved toward Schmid and Deputy Ivory's patrol car. (Dkt. No. 50-1 at 5); (Dkt. No. 52 at 33); (Dkt. No. 52-1 at 01:52–01:59)." (Dkt. 78 at 5).

7. Prior to ruling on Deputy Ivory's Motion for Summary Judgment, the Court viewed the video and referenced specific portions of it in its order granting summary judgment. Notwithstanding Hannibal's own views and opinions concerning the "tense, uncertain and rapidly evolving" situation portrayed in the video (a situation created entirely by Hannibal's dangerous conduct), nothing in the video blatantly contradicts the Court's determinations.

8. In her third argument, in an apparent attempt to distinguish *Peña v. City of Rio Grande City*, 879 F.3d 613 (5th Cir. 2018), Hannibal challenges the Court's observation that, "Hannibal was suspected of a crime when she fled because she was 'driving erratically' and 'traveling at a high rate of speed.'" (Dkt. 78 at 14).

9. Hannibal argues, "[i]t's patently reasonable to conclude that if Deputy Ivory deemed Hannibal a suspect, she would have engaged as any police officer would – arresting or detaining Hannibal." (Dkt. 80 at 3).

10. As set out previously, the record establishes that Hannibal immediately drove away from Deputy Ivory upon making initial contact, and there was, in fact, a lengthy pursuit during which Hannibal failed to heed the flashing lights of a pursuing police vehicle. As the United States Supreme Court noted in *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S. Ct. 673, 676, 145 L. Ed. 2d 570 (2000), "[h]eadlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." The record further demonstrates Hannibal's repeated refusals to comply with Deputy Ivory's commands. Evading in a motor vehicle and interference with public duties are, respectively, felony and misdemeanor criminal offenses under Texas law (*see* Texas Penal Code §§ 38.04, 38.15). Under these circumstances, there is nothing in the record to support the argument that a reasonable police officer could not have suspected that Hannibal had committed a crime. By the time Hannibal finally stopped her vehicle, she had, in fact, already committed the crime of evading in a motor vehicle. Further, the record shows

4

Hannibal's later disobedience of Deputy Ivory's commands and getting back into her vehicle prevented Hannibal from being placed in custody or being subjected to additional arrest procedures by Deputy Ivory in violation of Texas Penal Code § 38.15 (Interference with Public Duties).

11. Significantly, what Hannibal also fails to address is Hannibal's use of her motor vehicle as a deadly weapon. *See Fraire v. City of Arlington*, 957 F.2d 1268, 1273–77 (5th Cir. 1992). The Court viewed the video and determined that Hannibal had used her car in a threatening manner when Hannibal drove toward Deputy Ivory under the circumstances present in this case. (Dkt. 78 at 4-5).

12. Finally, Hannibal complains, "[f]urther, the Court further bolsters its conclusion that the Hannibal vehicle was potentially a dangerous weapon driven at Deputy Ivory and Schmid by noting that Hannibal was charged with aggravated assault against a public servant. This evidence must be viewed only in light of the fact that all charges against Hannibal involving the incident with Deputy Ivory were dismissed by the office of the Harris County District Attorney." (Dkt. 80 at 3-4).

13. Whether the charges against Hannibal where ultimately dismissed – or the basis for any such dismissal – is not relevant to the Court's determination that a motor vehicle, under the facts of this case, can be used as a deadly weapon. (Dkt. 78 at 13). As this Court observed in *Livingston v. Tex.*, 632 F. Supp. 3d 711, 724 (S.D. Tex. 2022), aff'd, No. 22-40719, 2023 WL 4931923 (5th Cir. Aug. 2, 2023), "[y]et the fact that charges were dismissed 'is of no consequence' when considering a claim of

5

false arrest." Likewise, the Harris County District Attorney Office's dismissal of charges against Hannibal is of no consequence to this Court's determination of Hannibal's use of her motor vehicle as a weapon. The record before the Court establishes that Deputy Ivory could have reasonably perceived that Hannibal was using her vehicle as a deadly weapon.

## II.   CONCLUSION

14.   For the foregoing reasons, the record supports this Court's summary judgment, and *Plaintiff's Motion for New Trial* should be denied.

Respectfully submitted,

DAVID A. NACHTIGALL, ATTORNEY AT LAW, PLLC

*/s/ David A. Nachtigall*
David A. Nachtigall
Federal Bar No. 358606
State Bar No. 24049076
1545 Heights, Ste. 100
Houston, Texas 77008
Tel 713.2211.0008
Fax 713.650.1602
david@dntriallaw.com

*Attorneys for Defendant Sharmayne Ivory*

6

## **CERTIFICATE OF WORD COUNT**

I hereby certify that the foregoing response contains 1285 words.

*/s/ David A. Nachtigall*
David A. Nachtigall

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 17, 2025, I electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system which will send notification to all parties of record.

*/s/ David A. Nachtigall*
David A. Nachtigall